LOLLEY, J.
1 ^Defendants, Larry Allen Michael, Penny Gail Michael, and the Estates of Emma Hill and Heniy Hill, appeal a judgment of the First Judicial District Court, Parish of Caddo, State of Louisiana, granting summary judgment in favor of Cropprue Rental Properties, L.L.C. Finding genuine issues of material fact as to one of the parties, we reverse in part, affirm in part, and remand for further proceedings.
Facts
Cropprue Rental Properties, L.L.C. (“Cropprue”), initiated this lawsuit against the defendants, Larry Allen Michael, Penny Gail Michael, and the Estates of Emma Hill and Henry Hill (“the Michaels” and “the Hills”), to quiet title to property acquired by Cropprue from the Parish of Caddo (“the parish”) and the City of Shreveport (“the city”) by virtue of a cash sale of adjudicated property. The proper *647 ty at issue is located at 5612 Jewella Avenue, Shreveport, Louisiana (“the property’).
Beginning in 1996, parish and city taxes on the property became delinquent. As a result, the Caddo Parish Sheriffs Office (“the sheriffs office”) sent written notice to the record owners of the property, the Michaels, at 7803 Capri Circle, Houston, Texas 77095 (“the Capri Circle address”). The Michaels received notice at this address.
When property taxes became delinquent in 1997, the sheriffs office once again mailed notice to the Michaels at the Capri Circle address along with their intent to adjudicate the property if the tax debt was not satisfied. However, unlike the previous year, notice was returned undeliverable. ¡2Unbeknownst to the sheriffs office, the Michaels moved to a new home located at 13503 Olden Court, Cypress, Texas 77429.
As was required by law, the sheriffs office published notice of the tax delinquency in the Shreveport Times on April 8, 1998, and May 6, 1998. Ultimately, the taxes assessed to the Michaels were never paid, and the property was adjudicated to the parish and the city.
Contemporaneous to these adjudication proceedings, the Hills began to operate a daycare facility on the property. By way of a bond for deed recorded on August 8, 1996, the Michaels conveyed what they believed to be all of the property they owned on Jewella Avenue to the Hills — the Michaels owned both 5610 and 5612 Jewel-la Avenue in Shreveport. However, for reasons unclear, the bond for deed only included the legal description for the property located at 5610 Jewella Avenue and not the property at issue in this case.
After the Hills satisfied all payments pursuant to the bond for deed, the Mi-chaels executed a cash sale deed in favor of the Hills on February 8, 2006. Again, only the property located at 5610 Jewella Avenue was conveyed to the Hills.[1] Despite having no title to the property at issue, the Hills have maintained and operated a daycare facility at both 5610 and 5612 Jewella Avenue since at least 1998.
In early 2013, Cropprue became interested in purchasing the property. Crop-prue, through its manager, Shannon Crop-prue, contacted the sheriffs office in an attempt to gain the most current address of the owners of the | .^property. Shannon obtained the Michaels’ Capri Circle address, and mailed written notice to the Michaels notifying them of Cropprue’s intent to purchase the property. However, this notice was returned undeliverable as the Michaels no longer lived at that address. Additionally, Shannon and the sheriffs office published notice in the Cad-do Citizen alerting the Michaels or anyone with an interest in the property that their rights may be terminated.
Receiving no response from the Mi-chaels or the advertisement, the parish and city sold the property to Cropprue for $2,420.00. Shortly thereafter, Shannon physically went to the property to inform the occupants that Cropprue had purchased the property; however, upon arrival, Shannon was told to vacate the premises.
Cropprue filed a petition to quiet title on July 10, 2013. The Michaels and the Hills filed an answer and reconventional demand to annul the tax title, arguing that the 'adjudication of the property to the parish and city was null and void and that the subsequent sale of the property to *648 Cropprue was invalid due to insufficient notice.
Each party filed motions for summary judgment asserting their respective positions. In particular, the Michaels and Hills requested the trial court declare the tax sale adjudications to be absolute nullities and the subsequent cash sale to Crop-prue to be invalid. The Michaels and Hills argued that both the sheriffs office and Cropprue could have taken additional steps, such as a simple conveyance records or internet search, to locate the Michaels’ current address. On the other hand, Cropprue claimed |4that proper notice was given to the Michaels, and requested the trial court confirm and quiet its tax title to the property.
Following oral argument, the trial court took the matter under advisement and issued a lengthy opinion in favor of Crop-prue. In particular, the trial court found that with respect to the tax sale adjudication, the sheriffs office was in compliance with the due process standards set forth in Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), when it sent written notice by certified mail to the Michaels’ last known address and then published notice in the Shreveport Times when notice was returned undeliverable. The trial court also held that Cropprue complied with the notice requirements set forth in La. R.S. 47:2206 when it sent notice to the Michaels about its intent to purchase the property. It is from this judgment that the Michaels and Hills appeal.
Discussion
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Samaha v. Rau, 2007-1726 (La.02/26/08), 977 So.2d 880; Thomas v. Willis-Knighton Med. Ctr., 43,176 (La.App.2d Cir.04/30/08), 981 So.2d 807, writ denied, 2008-1183 (La.09/19/08), 992 So.2d 932. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A). A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue of material | afact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
A fact is material if it potentially ensures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. Jackson v. City of New Orleans, 2012-2742 (La.01/28/14), 144 So.3d 876. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Id.
Here, because the trial court granted summary judgment in favor of the tax purchaser, the law governing tax sales underlies our review of the grant of summary judgment. Tax sales are presumed valid, and La. Const, art. VII, § 25(A)(1) provides that the “tax deed by a tax collector shall be prima facie evidence that a valid sale was made.” La. Const, art. VII, § 25(A)(1); Smitko v. Gulf S. Shrimp, Inc., 2011-2566 (La.07/02/12), 94 So.3d 750, 757. The opponent of the motion must then offer evidence sufficient to rebut the presumption of regularity. Smitko, supra. Only if the presumption is sufficiently rebutted does it become the burden of the tax purchaser to go forward and prove that all requisites for a valid tax sale were complied with. Id.

*649
Adjudication of the Property to the Parish and the City

As their first assignment of error, the Michaels and Hills contend that the trial court erred in finding that they were provided sufficient notice of the tax sale adjudication to the parish and city.
| fiUnder the Fourteenth Amendment to the United States Constitution and La. Const, art. I, § 2, deprivation of property by adjudication must be preceded by notice and opportunity to be heard appropriate to the nature of the case. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950); Tietjen v. City of Shreveport, 2009-2116, (La.05/11/10), 36 So.3d 192. In Mullane, the Supreme Court established that “[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.” Mullane, supra at 314, 70 S.Ct. at 657.
In Mennonite, supra, the Supreme Court recognized that the sale of property for nonpayment of taxes is an action affecting a property right protected by the Due Process Clause of the Fourteenth Amendment. Therefore, as a minimum constitutional precondition to such a proceeding, notice must be sent by mail or other means certain to ensure actual notice if the party’s name and address are reasonably ascertainable. Id. at 800, 103 S.Ct. at 2712.
Louisiana Const, art. VII, § 25 also requires the tax collector to provide notice to a delinquent taxpayer. In former La. R.S. 47:2180, which was in effect at the time of the tax sale in this case, the legislature set forth the manner by which notice of delinquencies in immovable property taxes must be provided in compliance with La. Const, art. VII, § 25 and Mennonite. Louisiana R.S. 47:2180 provided in pertinent part:
_JjA. On the second day of January each year, or as soon thereafter as possible, the tax collector shall address to each taxpayer who has not paid all the taxes, which have been assessed to him on immovable property, or to the record owner of the property for which the taxes are delinquent, or to the actual owner in the event the record owner is deceased, written or printed notice in the manner provided for herein that his taxes on immovable property must be paid within twenty days after the service or mailing of the notice, or that the property will be sold according to law.
B. The tax collector shall send to each taxpayer by certified mail, with return receipt requested, the notice prescribed herein, provided that in cities containing a population of over fifty thousand persons, the tax collector may either send this notice by certified mail or may make personal or domiciliary service on the taxpayer. In the event the certified notice is returned as being undeliverable by the post office, the tax collector may comply with Article 7 Section 25 of the Constitution of Louisiana and the provisions of this Section by advertising the tax debt- or’s property in the advertising required for unknown owners in Subsection C of this Section. After the tax collector shall have completed the service by the notices herein required, either by mail or by personal or domiciliary service, he shall make out a' process verbal stating therein the names of delinquents so notified, their post office address, a brief description of the property, *650 the amount of taxes due and how the service of notice was made.
C. The tax collector shall publish one general notice substantially in the form set forth herein, addressed to all unknown owners of assessed immovable property situated in his parish, and to nonresident owners of such property whose post office address is unknown, in which he shall describe the property as described in the' tax roll. Such notice shall be published once a week for two weeks in a newspaper published in his parish or if there be none published in the parish, then such notice shall be given in the manner provided by law for judicial sales.
Thus in this case, in order to be in compliance with La. R.S. 47:2180 and Mennonite, the sheriffs office was required to provide the Michaels, as record owners of the property, with written notice, sent by certified mail, | ^return receipt requested, alerting them that their failure to pay taxes could result in the divestiture of their property. If notice was returned undeliverable, as it was in this case, the sheriffs office could then satisfy notice requirements by advertising the tax delinquency in the manner provided in the statute.
Here, a review of the record shows the sheriffs office to be in compliance with the statute. Written notice of the tax delinquency was sent to the Michaels at the Capri Circle address, the address where they received notice only a year prior. When notice was returned undeliverable, the sheriffs office published two separate notices in the Shreveport Times.
As to the Hills, we note that they had no record ownership of the property at the time the tax sale adjudication to the parish- and city took place. As discussed above, the bond for deed whereby the Michaels thought they conveyed full ownership of both 5610 and 5612 Jewella Avenue only included the legal description for 5610 Jewella Avenue. Thus, as a third party without record ownership, the Hills are not a proper party to raise notice issues relating to the original tax sale adjudication to the parish and city. Accordingly, the Michaels’ and Hills’ first assignment of error is without merit.

Cash Sale of Adjudicated Property to Cropprue

The Michaels’ and Hills’ second assignment of error relates to whether Crop-prue complied with La. R.S. 47:2206 when purchasing the property from the city and parish.
|9When adjudicated property is being sold by a political subdivision, La. R.S. 47:2206 sets forth the notice requirements the political subdivision must follow, and provides, in pertinent part:
A. (1) Either the political subdivision or the acquiring person shall send a written notice notifying any tax sale party whose interest the successful bidder or donee intends to be terminated that the party has until the later of the following to redeem the property or otherwise challenge in a court of competent jurisdiction the potential sale or donation:
(a) Sixty days from the date of the notice provided in this Subsection, if five years have elapsed from the filing of the tax sale certificate, or six months after the date of the notice provided for in this Subsection, if five years have not elapsed since the filing of the tax sale certificate.
(b) The filing of the sale or donation transferring the property.
[[Image here]]
*651 B. (1) Either the political subdivision or the acquiring person shall cause to be published in the official journal of the political subdivision a notice that any tax sale party whose interest the successful bidder or donee intends to be terminated has, to redeem the property, until the later of:
(a) Sixty days, for property on which a tax sale certificate was filed over five years previous of the first publication, or six months if the tax sale certificate was filed less than five years before the first publication of the notice provided for in this Subsection.
(b) The filing of the sale or donation transferring the property!.]
As discussed herein, when Shannon became interested in purchasing the property, she inquired with the sheriffs office as to the most current address on record for the Michaels. The Capri Circle address was provided |into her, and she mailed notice via certified mail, return receipt requested, informing the Michaels that Crop-prue intended to purchase the property. The letter was returned undeliverable. Shannon and the sheriffs office then separately published notice in the Caddo Citizen alerting the Michaels or any other interested party that their rights in the property could be terminated. Although Cropprue did nothing extra to locate the Michaels, their conduct appears minimally to satisfy La. R.S. 47:2206.
Using the same reasoning above in regards to the Hills, with no record ownership in the property until May 2014, the Hills are not a proper party to raise a notice issue in this case. They are, however, a proper party to challenge Cropprue’s ownership of the property. As set forth in Cropprue’s petition and in the Michaels’ and Hills’ reconventional demand, the Hills were named as defendants due to their occupancy of the property.
The undisputed facts in this case indicate that the Hills have been in possession of the property and operating a daycare facility since at least 1998. Thus, acting as owner and being in possession for more than a year, the Hills acquired the real right of possession. See La. C.C. art. 3422. Moreover, a possessor is considered provisionally as owner of the thing he possesses until the right of the true owner is established. La. C.C. art. 3423. Although this issue was never raised at the trial court level, nor did the Hills specifically request any particular relief related to possession, we find that the Hills sufficiently asserted their ownership rights as a defense to Cropprue’s petition. Ultimately, the determination of ownership is a question of fact. When, as here, a genuine issue of material fact remains, In the matter is not ripe for summary judgment. Therefore, the trial court’s grant of summary judgment in favor of Cropprue must be reversed.
Conclusion
Finding issues of material fact in regards to the Estates of Emma Hill and Henry Hill’s legal rights as possessors, we reverse summary judgment in their favor. Summary judgment dismissing Larry Allen Michael and Penny Gail Michael from this matter is affirmed. All costs of this appeal are assessed one half to Larry Allen Michael and Penny Gail Michael and one half to Cropprue Rental Properties, L.L.C.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

. An act of correction was recorded on May 29, 2013, in order to properly set forth the property that the Michaels originally intended to convey to the Hills.